# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00392-CR

**Tyler David Ebanks, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 72912, HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Tyler David Ebanks was indicted for intentionally or knowingly causing serious bodily injury to his then three-year old stepson. *See* Tex. Penal Code § 22.04(a) (setting out elements of offense of causing serious bodily injury to child), (c)(1) (defining child as someone under age of fourteen), (e) (specifying that offense is first-degree felony if "committed intentionally or knowingly"). After being indicted, Ebanks entered a plea of guilty to the charged offense. The district court determined that there was sufficient evidence to support the plea, accepted the plea as voluntary, and sentenced Ebanks to 30 years' confinement. *See id.* § 12.32 (listing permissible punishment range for first-degree felony). On appeal, Ebanks argues that he was denied effective assistance of counsel. We will affirm the district court's judgment of conviction.

DISCUSSION

**Effective Assistance of Counsel**

In his sole issue on appeal, Ebanks argues that his trial attorney provided ineffective assistance of counsel regarding his guilty plea. As support for this assertion, Ebanks notes that he was charged with intentionally or knowingly causing serious bodily injury to a child, *see* Tex. Penal Code § 22.04(a), (c)(1); *see also id.* § 1.07(a)(46) (defining "[s]erious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ"), and points to portions of his testimony that he provided after entering his plea that he asserts shows that he did not knowingly or intentionally cause serious bodily injury to his stepson, *id.* § 6.03(a), (b) (specifying circumstances under which person acts intentionally or knowingly); *cf. Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (explaining that for crime of injury to a child, "[t]he State must prove that a defendant caused a child's serious bodily injury with the requisite criminal intent"). Specifically, he highlights that during his testimony he explained that he struck his stepson with an open hand on the side of the face because his stepson refused to take a nap; that his stepson fell, hit the corner of the bed, and started shaking; that he was surprised that his stepson fell because he did not think that he hit his stepson that hard; that he answered, "No, sir," when asked if he intended to hurt his stepson; that he later explained that he did not intend to hurt his stepson; and that he denied during his cross-examination that he hit his stepson with enough force to "break his [stepson's] ear" or to crack his stepson's skull on both sides and instead urged that the injuries occurred when his stepson hit the corner of the bed.

2

In light of the above testimony, Ebanks contends that he "asserted his innocence of the charged offense . . . when he repeatedly claimed he did not intend to injure the child"; that a "plea of guilty while testifying to innocence cannot be free[ly], voluntar[ily], and intelligently entered"; that his counsel should have moved to withdraw the plea "because it was not freely and voluntarily entered"; that his counsel "failed to properly advise [him] on the elements of the offense and [he] was in no position to enter a plea of guilty to an offense he did not understand and denied committing"; and that had he understood the elements of the offense charged, he would not have pleaded guilty.

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). Evaluations of effectiveness are based on "the totality of the representation," *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies), and allegations of ineffectiveness must be firmly established by the record, *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

3

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett*, 65 S.W.3d at 63 (stating that in majority of cases, record in direct appeal is undeveloped and "cannot adequately reflect the motives behind trial counsel's actions"). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Before a plea of guilty may be accepted by a trial court, the plea must be voluntarily and freely given by a defendant who is mentally competent. *See* Tex. Code Crim. Proc. art. 26.13(b). "The constitutional validity of a guilty plea made upon the advice of counsel depends on whether counsel's performance was reasonably competent, rendering a defendant effective representation during the particular proceedings." *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). "Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary." *Ex parte Moussazadeh*, 361 S.W.3d 684, 688 (Tex. Crim. App. 2012). "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Id.* at 689; *see also Ex parte Harrington*, 310 S.W.3d 452, 458-59 (Tex. Crim. App. 2010) (explaining that counsel has duty to

4

advise client regarding what plea to enter, that advice should be based on adequate investigation of case or reasonable decision that investigation is not necessary, and that if representation falls below standard, "any resulting guilty plea [is] involuntary").

Turning to the arguments made by Ebanks, we note that the record is silent regarding any discussions that his attorney may have had with him about the elements of the offense charged and about his decision to enter a plea of guilty, and Ebanks does not refer to any portion in the record indicating that any advice that he received before entering his plea was inaccurate or ineffective. In addition, although Ebanks asserts that his attorney was ineffective for failing to move to withdraw his plea, the record does not contain any indication that Ebanks ever expressed any desire to withdraw or change his plea. Moreover, the record reveals that prior to Ebanks entering his plea, the district court questioned Ebanks about his understanding of the charges against him and of the permissible punishment range, about whether he understood that there was no plea bargain, and about whether he wanted to enter an open plea of guilty and to allow the court to determine his punishment. *See* Tex. Code Crim. Proc. art. 26.13(a) (listing admonishments that must be given before trial court may accept guilty plea). Furthermore, during this hearing, Ebanks stated that he went over the plea paperwork with his attorney and that he understood that he was waiving various rights, including his rights to have a jury trial, to call witnesses, and to not incriminate himself. In addition, he related that he understood that by signing the judicial confession, he was admitting his guilt to the alleged crime. Also, he acknowledged that he signed the judicial confession and stated that no one forced him to sign the document. Further, after the district court read the charges to him, Ebanks entered his plea of guilty, stated that no one forced him to enter that plea, and explained that

5

he was freely and voluntarily entering the plea solely for the reason that he was guilty of the crime charged. *See Mallett*, 65 S.W.3d at 64 (explaining that proper admonishments establish prima facie case that plea was voluntary and knowing).

Regarding Ebanks's assertion that his attorney's representation was deficient because his attorney did not move to withdraw his guilty plea after he testified, we note that although a "defendant may withdraw his guilty plea as a matter of right without assigning any reason until the judgment has been pronounced or the case has been taken under advisement," trial courts have discretion regarding whether to allow a defendant to withdraw his plea after it takes the case under advisement or pronounces its judgment. *Saldana v. State*, 150 S.W.3d 486, 490 (Tex. App.—Austin 2004, no pet.). Moreover, a trial court takes a case under advisement if it orders the preparation of a presentence-investigation report after it "has admonished the defendant, received the guilty plea and received the evidence." *Id.* In this case, Ebanks did not testify until after the trial court had admonished him, after Ebanks entered his plea, after the district court received evidence pertaining to the case including Ebanks's judicial confession, and after the district court ordered that a presentence-investigation report be prepared. Accordingly, even if Ebanks's attorney had moved to withdraw the plea, the district court had the discretion to deny that request.

Furthermore, in *Mallett*, the court of criminal appeals overruled a similar ineffectiveness claim asserting that Mallett's trial counsel should have moved to withdraw a guilty plea after Mallett testified that he did not intend to commit the offense charged. *See* 65 S.W.3d at 63. When overruling the issue, the court noted that during the plea hearing Mallett explained that he was pleading guilty because the charges were true, that his plea was freely and voluntarily made,

and that it was his decision to enter the plea. *Id.* at 64. Further, the court detailed that the trial court properly admonished Mallett, that the record did not establish that Mallett wanted to withdraw his plea, and that "even if Mallett's testimony was read as a protestation of innocence, all sorts of considerations may motivate a guilty plea." *Id.* In addition, the court noted that the record was silent regarding why Mallett's attorney did not move to withdraw the plea and that his counsel "may have felt that he could not rebut the recitations in the record that Mallett's plea was freely and voluntarily entered." *Id.* Those same considerations, including the absence of a fully developed record for this issue, are present in this case and similarly persuade us that Ebanks has failed to overcome the presumption that his attorney's representation fell within the wide range of reasonably professional assistance.

In light of the preceding, we must conclude that the record is not sufficiently developed regarding Ebanks's claims of ineffective assistance, that Ebanks has failed to overcome the presumption of reasonably professional assistance, and that Ebanks has not demonstrated that any of his trial attorney's alleged failures relating to his guilty plea were so outrageous that no competent attorney would have made those mistakes or that the alleged failures were so deficient as to somehow render his plea involuntary. Although we need not speculate on Ebanks's attorney's strategy, *see id.* at 64-65, we do note that his attorney might have believed that he could not rebut the recitations in the record that the plea was voluntarily and freely given and that the questions posed by his attorney regarding whether Ebanks intended to cause the harm were designed to elicit a response minimizing Ebanks's culpability, which was consistent with the strategy that the attorney

used when questioning the other witnesses that he called to the stand to testify for Ebanks and with the strategy of seeking the imposition of a lesser sentence.

Having determined that Ebanks has not shown that his attorney did not provide effective assistance of counsel regarding his guilty plea, we need not further address the matter, but we do note that effectiveness challenges must be considered in light of "the totality of the representation" provided by the attorney. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Moreover, we note that during the hearing regarding punishment, his trial attorney cross-examined the State's witnesses and called several witnesses to testify on Ebanks's behalf, including Dr. William Lee Carter, who discussed his psychological assessment of Ebanks and discussed Ebanks's childhood experiences, and Ebanks's mother, who discussed Ebanks's rough childhood and how "remorseful [he was] about what has happened" and asked the district court to place him on community supervision. In addition, his attorney questioned Ebanks about his recollections of the assault, about whether he regretted what happened, about the effect that the incident had on his life, and about what he would do if he were placed on community supervision. Finally, during his closing argument, Ebanks's attorney emphasized that Ebanks had no prior criminal history, asked the district court to impose community supervision, discussed Ebanks's abusive upbringing, and urged that Ebanks was trying to learn from his mistake and to become a better person.

For all of these reasons, we overrule Ebanks's issue on appeal.

## CONCLUSION

Having overruled Ebanks's issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   August 20, 2015

Do Not Publish

9